[Cite as *State v. Intihar*, 2015-Ohio-5507.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2015-05-046 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>12/30/2015 |
| - vs - | : | |
| | : | |
| ADAM P. INTIHAR, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM LEBANON MUNICIPAL COURT
Case No. CRB1401508


Paul R. Revelson, 50 South Broadway, Lebanon, Ohio 45036, for plaintiff-appellee

Allen Law Firm, LLC, Mitchell W. Allen, 5947 Deerfield Road, Suite 201, Mason, Ohio 45040, for defendant-appellant


**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Adam P. Intihar, appeals from his conviction and sentence in the Lebanon Municipal Court after a jury found him guilty of one count of menacing. For the reasons outlined below, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} On December 11, 2014, a complaint was filed in the Lebanon Municipal Court charging Intihar with one count of aggravated menacing in violation of R.C. 2903.21(A), a

first-degree misdemeanor. The charge stemmed from allegations Intihar brandished a firearm that caused the victim, Ryan Laber, to fear for his life during an apparent road-rage incident as the two were traveling northbound through Lebanon on State Route 48. It is undisputed that Intihar has a concealed carry permit and that he serves as a guardsman with the Ohio National Guard.

{¶ 3} On April 29, 2015, following a one-day jury trial, the jury found Intihar not guilty of aggravated menacing, but guilty of the lesser included offense of menacing in violation of R.C. 2903.22(A), a fourth-degree misdemeanor. After the jury returned its verdict, the trial court sentenced Intihar to serve 30 days in jail, with 27 of those days suspended, ordered him to pay $250 fine, and imposed five years of probation. As part of the conditions of his probation, Intihar was not permitted to purchase, own, posses, use, or have under his control, any deadly weapons or firearms at all times and under any circumstances.

{¶ 4} Intihar now appeals from his conviction and sentence, raising three assignments of error for review.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED IN FAILING TO ACQUIT DEFENDANT OF AGGRAVATED MENACING AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF WHERE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

{¶ 7} In his first assignment of error, Intihar initially argues the trial court erred by denying his Crim.R. 29(A) motion for acquittal as it relates to the originally charged aggravated menacing offense in violation of R.C. 2903.21(A). However, because the jury ultimately found Intihar not guilty of this charge, we find this issue to be moot. *E.g., State v. Howard*, 12th Dist. Butler No. CA2002-02-040, 2003-Ohio-2006, ¶ 15 (argument opposing trial court's decision to deny appellant's motion for acquittal was rendered moot by jury's not guilty verdict); *see also State v. Williams*, 74 Ohio St.3d 569, 576 (1996) (challenge to trial

court's decision denying appellant's motion for acquittal on a charge of rape was moot where the defendant was acquitted of that charge); *State v. Powers*, 9th Dist. Summit No. 23621, 2007-Ohio-4420, ¶ 6 ("because Appellant was acquitted of the felonious assault charge, we find that his argument regarding the denial of his Crim.R. 29 motion is moot"). To hold otherwise would necessitate this court to issue "an opinion concerning a matter which is no longer in controversy due to the jury's decision. We decline to issue such an advisory opinion." *State v. Osborne*, 12th Dist. Butler No. CA86-03-039, 1987 WL 18838, *4 (Oct. 26, 1987).

{¶ 8} Next, Intihar argues the trial court erred by denying his Crim.R. 29(A) motion for acquittal as it relates to the lesser included offense of menacing in violation of R.C. 2903.22(A). We disagree.

{¶ 9} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Hoskins*, 12th Dist. Warren No. CA2013-02-013, 2013-Ohio-3580, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 52. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court defers to the trier of

fact regarding questions of credibility. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 10} As noted above, Intihar was convicted of menacing in violation of R.C. 2903.22(A), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." The reach of R.C. 2903.22(A) is not so narrow as to restrict only conduct constituting an "overt threat." *In re P.T.*, 12th Dist. Clinton No. CA2013-02-006, 2013-Ohio-3881, ¶ 18. "Rather, the statute proscribes a much broader spectrum of behavior by criminalizing any conduct engaged in by a person knowing that such conduct would cause another to believe the offender will cause the other person, or the other's family, physical harm." *Id.* This "can encompass a present state of fear of bodily harm and a fear of bodily harm in the future." *State v. Scott*, 7th Dist. Mahoning No. 07 MA 152, 2009-Ohio-4961, ¶ 20, citing *State v. Ali*, 154 Ohio App.3d 493, 2003-Ohio-5150, ¶ 26 (7th Dist.).

{¶ 11} At trial, Laber testified that Intihar quickly came up behind him as he was driving northbound in the left hand lane on State Route 48 after having just purchased a Christmas tree with his two young children. During this time, Laber testified Intihar was traveling very close to his vehicle at a distance of less than one car length. However, due to traffic in the area, Laber testified he continued to drive in the left hand lane before eventually switching lanes in order to allow Intihar to pass. Laber then testified:

> Q: Okay. Now, specifically, the best you can remember, I know this was a couple months ago, defendant draws even with your car, specifically what, what did he, what did he do after that?
>
> A: He raised his pistol and then turned on his interior light to make it obvious that he had a pistol in his hand.
>
> Q: And what type of a, what type of a gun was it?

- 4 -

A: Handgun.

Q: At any point did you ever, did you ever roll down your window?

A: No.

Q: Did you ever say anything to the defendant?

A: No.

Q: And approximately how far away was he from you when he showed you the gun?

A: We were next to each other on a two-lane road.

When asked to describe Intihar's demeanor during this time, Laber testified Intihar "looked angry" and that he had a "stern look on his face[.]"

{¶ 12} Continuing, Laber then testified:

Q: Okay. Now, after he, after he showed you the gun, how did that make you feel that day?

A: I thought he was going to use it.

Q: Any other feelings you had that day?

A: My children, they were very scared. I was scared for them as well.

Q: Why did you think he was going to use the gun?

A: I've always known that if you pull the firearm you have intent to use it.

Q: And why is that?

A: There would be no other reason to show a firearm.

{¶ 13} Laber testified he then called 9-1-1 and followed Intihar as he made a quick left hand turn off State Route 48 into a nearby Kroger parking lot. When asked why he followed Intihar into the Kroger parking lot, Laber testified he "wanted to make sure that [he] had the accurate information so [he] could give it to the 9-1-1 operator so the police could take proper

action." Laber further testified that he took Intihar's act of brandishing a firearm and looking at him angrily "as a threat, period."

{¶ 14} Intihar also testified at trial. According to Intihar, he came up behind Laber in the left hand lane while traveling northbound on State Route 48 when Laber "locked up his brakes." In response, Intihar testified he also "locked up" his brakes and then switched lanes to avoid a collision with Laber's vehicle. Intihar testified Laber then sped off ahead of him. However, because traffic was moving slower in the right hand lane, Intihar testified he switched back into the left hand lane and came up behind Laber for a second time when Laber "taps his brakes again." To this, Intihar testified he got back into the right hand lane in order to pass Laber. However, instead of passing Laber, Intihar testified Laber "proceeded to speed up so that I couldn't get past him." Intihar then testified:

> Yet again I said, all right, fine, you win this time. So I let him proceed to go way ahead of me. Stayed in the right lane and again caught traffic in that lane going slow, proceeded back into the left lane. Mr. Laber was yet again another about quarter mile to a half mile ahead of me at least, like was out of eyesight.
>
> Driving along, caught up to traffic – or caught up to him again, this is a third time, so then got back into the right lane, stayed there. He took off, he's out of eyesight. Not sure how fast I was going at this point but there wasn't too much traffic around. But then eventually caught up to traffic right by the 123 bridge. Moved into the left lane, passed the traffic in the right lane, and then as I'm crossing – as we're in, like on that bridge crossing over 123, I proceeded back into the right lane.
>
> At that point Mr. Laber was in the left lane in front of me, he jumps over as I'm catching up, into the right lane in front of me to cut me off. So at that point I switch back to the left lane and drive off. At that point again he speeds up and pulls alongside me.
>
> And that is when I drew the firearm, held it up and just kind of looked at him like I'm sick of this, I've been trying (inaudible) the situation several times. Obviously I'm not an aggressive person, I joined the Army to be a medic to take care of a person not to go out and cause any harm. And, you know, tried to disengage, he hasn't allowed me to do that. I don't know the area too well, it's

dark, it's in the wintertime, I'm not, you know, I have no idea what's going on.

So at that point [I] pulled the firearm, look at him, he makes gestures towards me. I'm like, all right, whatever. We get to that light. I make no further gestures, nothing else, the firearm was the only thing.

According to Intihar, his actions in brandishing the firearm was justified since it served merely as a "deterrent."

{¶ 15} After a thorough review of the record, and when viewing the evidence in a light most favorable to the state, we find any rational trier of fact could have found the essential elements of menacing proven beyond a reasonable doubt; i.e., that Intihar knew that by brandishing a firearm and looking over at Laber angrily as the two were traveling next to each other on State Route 48 would cause Laber to believe Intihar would cause him or his children physical harm. This is true despite the fact that Intihar never pointed the gun directly at Laber's vehicle. Again, the menacing statute, R.C. 2903.22(A), is not so narrow so as to restrict only conduct constituting an "overt threat," but rather, prohibits any conduct engaged in by a person knowing that such conduct would cause another to believe the offender would cause physical harm to that person or to that person's family. Such is certainly the case here.

{¶ 16} In reaching this decision, we find it necessary to distinguish this case from this court's prior decision in *State v. Fields*, 84 Ohio App.3d 423 (12th Dist.1992). In *Fields*, the defendant, an off-duty police officer, discovered three boys fishing on property where she had boarded her horses for nearly two decades. *Id.* at 425. Upon discovering the boys on the property, which we noted "was covered with bushes and trees," the defendant retrieved a gun from the trunk of her car. *Id.* The defendant then confronted the three boys and "waved the gun around" before lowering the firearm and holding it by her side. *Id.* at 428. During this time, it was undisputed that the defendant "did not verbally threaten the boys or directly point

the gun at them." *Id.* The defendant then ejected the three boys from the property, with one of the boys claiming the defendant "was 'pretty nice' to him for most of the encounter." *Id.* Following this incident, the defendant was charged and subsequently convicted of aggravated menacing. *Id.* at 425.

{¶ 17} In reversing the defendant's conviction as being against the manifest weight of the evidence, this court stated:

> Based on this background and the above testimony, we find that there was not substantial evidence to support all the elements of aggravated menacing beyond a reasonable doubt. Although we are always reluctant to reverse a judgment as being against the manifest weight of the evidence, we must do so based upon the record before this court, which shows that there was no verbal or physical threat made by [the defendant] which would cause a fear of serious physical harm. The boys were trespassers, and under her indicia of authority [the defendant] was entitled to eject them from the property.

(Internal citation and footnote omitted.) *Id.* at 428.

This court also found the defendant's conviction was not supported by sufficient evidence since she "made no threat which would cause a fear of serious physical harm." *Id.*

{¶ 18} Relying on our holding in *Fields*, Intihar claims his conviction must be reversed because he made "no physical or verbal threat to Mr. Laber" and "did not point his gun at Mr. Laber nor even point it forward, but held it in side-profile, barrel-upwards without his finger on the trigger." Our decision in *Fields*, however, did not create such a bright line and definitive rule limiting the menacing statute to only those instances where the accused physically or verbally threatens the victim while pointing a gun directly at them. *See State v. Millikin*, 1st Dist. Hamilton Nos. C-030825 and C-03-0826, 2004-Ohio-4507, ¶ 23 (affirming an aggravated menacing conviction "[e]ven though [appellant] never pointed a gun at the police officers and did not verbally threaten them, in the entire context of the evening, it was reasonable to conclude that the police officers felt threatened and were fearful that

[appellant] would attempt to cause serious physical harm to them"). To hold otherwise would restrict the reach of the menacing statute well below its intended boundaries prohibiting a much broader spectrum of behavior.

{¶ 19} We also disagree with Intihar's claim that this case is "directly analogous" and "indistinguishable" from *Fields*. For instance, unlike in *Fields*, this case did not occur on private property "covered with bushes and trees," but rather, during an apparent road rage incident on a two-lane public roadway with other vehicles in the area. Moreover, also unlike in *Fields*, Intihar was not an off-duty police officer investigating a possible criminal trespass. Furthermore, when viewing the evidence in a light most favorable to the state, Intihar's interaction with Laber can hardly be classified as "pretty nice." Therefore, contrary to Intihar's claim, we find our holding in *Fields* is clearly distinguishable from the case at bar. Accordingly, because we find the state provided sufficient evidence to support Intihar's conviction for menacing, Intihar's first assignment of error lacks merit and is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE JUDGMENT OF CONVICTION FOR MENACING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 22} In his second assignment of error, Intihar argues his conviction for menacing was against the manifest weight of the evidence. We disagree.

{¶ 23} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. However, while appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 19.

**{¶ 24}** After a thorough review of the record, we find the jury did not clearly lose its way by finding Intihar knew that by brandishing a firearm and looking angrily at Laber during an apparent road rage incident would cause Laber to believe Intihar would cause him or his children physical harm. Once again, the menacing statute, R.C. 2903.22(A), is not so narrow as to restrict only conduct constituting an "overt threat," but rather, prohibits any conduct engaged in by a person knowing that such conduct would cause another to believe the offender would cause physical harm to that person or to that person's family. Therefore, while Intihar testified that he believed his conduct was justified and merely served as a "deterrent," the jury clearly found this testimony less than credible. Accordingly, because we find this is not one of those extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal, Intihar's second assignment of error also lacks merit and is overruled.

**{¶ 25}** Assignment of Error No. 3:

**{¶ 26}** THE TRIAL COURT ERRED IN ORDERING AS A CONDITION OF COMMUNITY CONTROL THAT DEFENDANT SHALL NOT OWN, POSSESS, USE, OR HAVE UNDER HIS CONTROL ANY DEADLY WEAPON OR FIREARM.

{¶ 27} In his third assignment of error, Intihar argues the trial court erred by prohibiting him from purchasing, owning, possessing, using, or having under his control, any deadly weapons or firearms as part of the conditions of his probation at all times and under any circumstances.

{¶ 28} A trial court has broad discretion in determining the conditions of probation and an appellate court will not reverse these conditions absent an abuse of discretion. *State v. Kidd*, 7th Dist. Belmont No. 11-BE-33, 2012-Ohio-6094, ¶ 11. However, "a trial court's discretion in imposing probationary conditions is not limitless." *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 11. Rather, a trial court should consider whether the probation condition to be imposed "(1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones*, 49 Ohio St.3d 51, 53 (1990). Probation conditions also "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *Id.* at 52.

{¶ 29} As the record reveals, while issuing its sentencing decision, the trial court stated that "[o]ne of the terms of probation, in addition to the customary terms, which are easy to comply with, of course is that you are not permitted to have a firearm[.]" The trial court also stated that it was requiring Intihar to submit a written notice "to the folks who issue the carrying conceal permits * * * that you have a suspended jail term for a menacing charge and that your permit is suspended and that you are not permitted to re-apply for another permit[.]" Based on the trial court's sentencing decision, Intihar was effectively prohibited from ever possessing a firearm at any time and under any circumstance during the five years that he was placed on probation.

{¶ 30} However, in light of our decision in *State v. Russell*, 12th Dist. Warren Nos. CA2011-06-058 and CA2011-09-097, 2012-Ohio-1127, and based on the fact that Intihar

serves as a guardsman with the Ohio National Guard, we reverse and remand this matter to the trial court so that it may fully consider whether Intihar should be prohibited from purchasing, owning, possessing, using, or having under his control, any deadly weapons or firearms as part of the conditions of his probation at all times and under any circumstances. In so holding, we stress that our decision to reverse and remand this matter should not be construed as giving any credence to the merits of Intihar's claim. Rather, based on the unique set of facts and circumstances of this case, we believe this issue deserves a more thorough review so that the trial court may determine whether such a restriction serves the statutory ends of probation or whether it is so overly broad that it unnecessarily impinges upon Intihar's liberty. Therefore, Intihar's third assignment of error is sustained to the extent indicated and this matter is remanded to the trial court for further proceedings. Intihar's conviction and sentence in all other respects is affirmed.

{¶ 31} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

RINGLAND and HENDRICKSON, JJ., concur.