[Cite as *State v. Baker*, 2020-Ohio-2882.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-08-146 |
| | : | O P I N I O N |
| - vs - | | 5/11/2020 |
| | : | |
| KIMBERLY BAKER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB01045


Neal D. Schuett, City of Hamilton Prosecuting Attorney, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for appellee

Christopher Paul Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant


**S. POWELL, J.**

{¶ 1}   Appellant, Kimberly Baker, appeals her conviction in the Hamilton Municipal Court for one count of assault.  For the reasons outlined below, we affirm.

{¶ 2}   On March 29, 2019, a complaint was filed charging Baker with one count of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor.  As alleged in the complaint, the charge arose after Baker grabbed the victim, M.B., through the passenger

side window of a truck parked outside of 96 Whitaker Avenue, New Miami, Butler County, Ohio at approximately 6:30 p.m. on the evening of March 17, 2019. Upon grabbing M.B., Baker then pulled M.B. through the window and out onto the ground, which resulted in M.B. suffering a broken right arm. There is no dispute that the truck from which Baker pulled M.B. belonged to M.B.'s boyfriend, M.A. M.A. is Baker's brother.

{¶ 3} On July 2, 2019, the matter was tried to the bench. During trial, the trial court heard testimony from three witnesses: M.B., Baker, and Baker's and M.A.'s father, T.A. M.B. testified that she and M.A. had gone to T.A.'s house to pick up some of M.A.'s belongings on the evening of March 17, 2019. When asked the address of T.A.'s house, M.B. testified that she was "not familiar with this area" because she was "not from around here" but that she "believed" it was 96 Whitaker Avenue, Hamilton, Butler County, Ohio. Specifically, as M.B. testified:

> A: I believe it was 96 Whitaker Avenue. I'm not familiar with this area and I'm not from around here.
>
> Q: What city is that in, do you know?
>
> A: Butler, Hamilton. I have – I'm not familiar with this area.
>
> Q: Okay.
>
> A: I just know that Butler County Police responded, but –

{¶ 4} M.B. testified that she was planning on just sitting in the truck while M.A. got his belongs "because I know his parents and family don't like me." However, when T.A. walked by the truck and waved to her, M.B. got out of the truck to help. M.B. testified that this lasted for approximately 30 minutes. M.B. testified that M.A. then went inside T.A.'s house to see his daughter. After M.A. was inside the house, M.B. went back to the truck to wait for M.A. thinking they would "hopefully leave soon." M.B. testified that she was the only one outside T.A.'s house at that time. This included both T.A. and Baker, as well as

M.A.'s mother.

{¶ 5} M.B. testified that she heard yelling coming from inside T.A.'s house a short time later, "not even five minutes." M.B. testified that she then watched as M.A. came out of the house with Baker "chasing behind him." When asked to describe Baker's demeanor at that time, M.B. testified that Baker came "charging" out of the house "very aggressive like," "yelling all crazy," chasing after M.A. "trying to get him by his shirt and pull him back." M.B. testified M.A.'s mother then came out of T.A.'s house and started "running" towards the truck yelling at her. Seeing M.A.'s mother "charging" at her, M.B. rolled up the truck's passenger side window about halfway. M.B. testified that M.A. then came over to the truck to "kind of like get in front of [his mother]" to "try to like block her to tell her, you know, it's not – to leave her alone, you know."

{¶ 6} M.B. testified that M.A. and Baker then started to "go at it again." According to M.B., this included Baker choking M.A. from the front while at the same time M.A.'s mother was behind him "in the back like choking, like pulling from the back[.]" Seeing this, M.B. took out her phone and started recording. Upon noticing that M.B. was recording the fight with her phone, Baker got mad and "started charging" towards the truck where M.B. was sitting. Describing what happened next, M.B. testified:

> [Baker] charges the – she charges the truck. The window is back down, because obviously I rolled it back down to see everything else that was going on when the mom backed away, and rolled it back down and that's when, you know, [Baker] noticed me recording, she charges at the truck.
>
> And she comes in the truck window to try to get the phone from me from recording, and we're tugging back and forth over the phone, and she grabs me by the shirt and she just drags me out of the window and I fell * * * on my [right] arm.

{¶ 7} M.B. testified that after being pulled through the window, she took a "pretty fair drop" and heard her right arm "snap" as she landed on the sidewalk below. M.B.

testified that Baker and M.A.'s mother then "just kind of backed off" and "they couldn't care less to help or to call or nothing." Seeing that M.B. was in need of medical attention, M.A. drove her to the hospital where she was diagnosed with a broken right arm. Due to the severity of the injury, M.B. testified that she had to have two metal plates put in her arm to fix the break. M.B. testified that she is still seeking treatment for the injury "and now they're actually at the point to almost wanting to do another surgery, because it won't heal."

{¶ 8} Following M.B.'s testimony, the state rested. Baker then moved the court for acquittal pursuant to Crim.R. 29(A). Baker supported this motion by arguing the state failed to prove venue was proper in the trial court since there was no "clear establishment of jurisdiction." The trial court disagreed and overruled Baker's motion.

{¶ 9} T.A. testified in Baker's defense. T.A. testified that there was an "incident" inside his home between his daughter, Baker, and his son, M.A., on the evening of March 17, 2019. Describing this incident, T.A. testified that M.A. had gone inside his house to see his daughter. Once inside, T.A. testified that M.A. was told that he could not see his daughter if M.B. was with him. T.A. testified that M.A. then "verbally chewed out" his mother, which prompted Baker to come downstairs and ask M.A. to leave. T.A. testified that M.A. refused to leave and instead demanded to see his daughter. T.A. testified that Baker then told M.A. "no, you need to get out now" as M.A.'s mother pushed him out the door.

{¶ 10} Once M.A. was outside, T.A. testified that "[Baker] went after him and said you need to get off the property." T.A. testified that M.B. was at that time recording the incident with her phone through the passenger side window of M.A.'s truck. Seeing that M.B. was recording, T.A. testified that Baker ran over to M.B., grabbed the phone out of M.B.'s hand, and took off running back towards the house. T.A. testified that M.A. then chased after Baker and put her in a choke hold. T.A. testified that M.B. then started to get out of M.A.'s truck when "she fell and broke her arm." According to T.A., Baker "was not

nowhere around" M.B. when "she jumped down to get out and hit the ground."

{¶ 11} Baker then testified. Baker testified that she came downstairs after hearing M.A. "screaming and cussing" at their mother. During this time, Baker testified that she heard M.A. call their mother "a piece of crap mother, and, but not so nice words, and hit the table." To this, Baker testified that she asked M.A. to leave. Baker testified that M.A. then started "cussing and screaming" at her. Baker testified that she then tried to push M.A. out the door. However, according to Baker, M.A. pulled on her arm and pulled her out the door with him. Baker testified that M.A. then pointed to M.B. and told her to start recording. Describing what happened next, Baker testified:

> And as we were going towards the truck, my brother stepped in front of me to stop me, I pushed on him. He – my mom is pulling on him, and then I got away from my brother, I went over to the truck, I grabbed the phone, and my exact words, excuse my language, I said, didn't get what happened inside, bitch.
>
> I then took the phone out of her hand, walked away from the truck. And my brother said give her back the phone, I turn around, and I said I will give back the phone when the cops get here. Put the phone in my pocket.

{¶ 12} Continuing, Baker testified:

> My brother – and then I turned around and walked away, my brother chases me, jumps on my back, puts his arm around my neck, and I was going blue, and all I heard was my mom yelling, [M.B.] broke her arm.
>
> That's when my brother finally let go of me, and then I turned around, threw the phone at him, because I didn't want to get in trouble for theft, threw the phone at him and dad – my dad yelled, I called 911, and my brother jumped in the truck and he said f*** the cops, and sped off.

{¶ 13} Explaining further how she took M.B.'s phone from her, Baker testified that she "grabbed from the top, and ripped it out of her hand[.]" When asked if it was just that easy to take M.B.'s phone from her, Baker testified "I don't know if I was stronger that day or what, honestly." Baker then rested.

{¶ 14} After hearing closing arguments from both parties, the trial court issued its decision finding Baker guilty as charged. In reaching this decision, the trial court noted that it had found M.B.'s testimony credible, whereas Baker's testimony was not. As the trial court stated:

> [T]here is no dispute that Ms. Baker came up to the truck and just grabbed the phone [from M.B.] Now, whether or not – Ms. Baker says she didn't touch [M.B.]. [M.B.] says she touched her and dragged her out of the truck.
>
> So I do not find – I find [M.B.'s] testimony more credible than Ms. Baker's testimony, at least in regards to contact with [M.B.]. I do not believe Ms. Baker didn't touch [M.B.] when she grabbed the phone. I do not find that credible. I find [M.B.] credible on that.

{¶ 15} Upon finding Baker guilty, the trial court sentenced Baker to 180 days in jail, with all 180 days suspended, placed Baker on two years of community control, and ordered Baker to pay a $300 fine plus court costs. The trial court also ordered Baker to pay $4,183.60 in restitution for the medical expenses M.B. incurred to treat her broken right arm. Baker now appeals her conviction, raising four assignments of error for review.

{¶ 16} Assignment of Error No. 1:

{¶ 17} MS. BAKER'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT OVERRULED HER CRIMINAL RULE 29 MOTION AFTER THE STATE FAILED TO PROVE THE FACT OF VENUE BEYOND A REASONABLE DOUBT.

{¶ 18} In her first assignment of error, Baker argues the trial court erred by denying her Crim.R. 29(A) motion for acquittal since there was insufficient evidence to prove venue beyond a reasonable doubt. We disagree.

{¶ 19} The standard of review for a denial of a Crim.R. 29(A) motion for acquittal is the same as the standard of review for a sufficiency of the evidence claim. *State v.*

*Robinson*, 12th Dist. No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

{¶ 20} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Meridy*, 12th Dist. Clermont. No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "The importance of venue is to give the defendant the right to be tried in the vicinity of his alleged criminal activity." *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 58. "Venue is not a material element of any offense charged." *State v. Davis*, 12th Dist. Clinton No. CA2015-12-022, 2017-Ohio-495, ¶ 22. However, although not a material element of any offense, venue is nevertheless "a fact that the state must prove beyond a reasonable doubt." *State v. McCollum*, 12th Dist. Clermont No. CA2014-11-077, 2015-Ohio-3286, ¶ 8, citing *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 17. "When the state fails to prove venue with respect to a charged criminal offense, the defendant is entitled to be discharged from that offense." *Id.*, citing *State v. Lahmann*, 12th Dist. Butler No. CA2006-03-058, 2007-Ohio-1795, ¶19.

{¶ 21} "Pursuant to R.C. 2901.12(A), venue lies in any jurisdiction in which the

offense or any element of the offense was committed." *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 29. "Venue need not be proven in express terms; it may be established either directly or indirectly by all the facts and circumstances of the case." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, ¶ 144, citing *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). "'Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial.'" *State v. Behanan*, 12th Dist. Butler No. CA2009-10-266, 2010-Ohio-4403, ¶ 19, quoting *State v. Chintalapalli*, 88 Ohio St.3d 43, 45 (2000), citing *State v. Draggo*, 65 Ohio St.2d 88, 92 (1981). "Trial courts have broad discretion to determine the facts that would establish venue." *Jackson*, citing *Toledo v. Taberner*, 61 Ohio App.3d 791, 793 (6th Dist.1989).

{¶ 22} Baker argues the trial court erred by denying her Crim.R. 29(A) motion for acquittal since M.B. testified that she was unsure of where the assault took place, believing it occurred at 96 Whitaker Avenue, Hamilton, Butler County, Ohio when the record indicates the assault actually occurred at 96 Whitaker Avenue, New Miami, Butler County, Ohio. However, regardless of whether the assault took place in Hamilton or New Miami, the trial court has territorial jurisdiction over both Hamilton and New Miami as set forth in R.C. 1901.02(B).[1]

{¶ 23} Pursuant to R.C. 1901.02(B), the trial court "has jurisdiction within Ross and St. Clair townships in Butler county." "The Village of New Miami is in St. Clair Township located just north of the city of Hamilton." *Barrow v. New Miami*, Butler C.P. No. CV2013 07 2047, 2017 Ohio Misc. LEXIS 18638, *2 (Feb. 8, 2017). "A municipal court in Ohio has jurisdiction over misdemeanors occurring within its territorial jurisdiction." *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 11. In turn, when considering Hamilton and New

---

1. "Municipal court jurisdiction has often been referred to as 'territorial jurisdiction' and, as such, is essentially the same as venue." *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 10.

Miami are both within the trial court's territorial jurisdiction, any rational trier of fact could have found the state had proven venue beyond a reasonable doubt. This is because, as noted above, venue need not be proven in express terms so long as the facts and circumstances of the case demonstrate a sufficient nexus between the defendant and the trial court's territorial jurisdiction. Such is the case here. *See generally State v. Lunsford*, 12th Dist. Butler No. CA2019-07-116, 2020-Ohio-965 (affirming appellant's conviction for assault in the Hamilton Municipal Court that occurred in New Miami). Therefore, finding no error in the trial court's decision denying Baker's Crim.R. 29(A) motion for acquittal, Baker's first assignment of error lacks merit and is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} MS. BAKER'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL WERE VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 26} In her second assignment of error, Baker argues she received ineffective assistance of counsel when her trial counsel put forth a defense that elicited testimony conclusively establishing that the assault occurred at 96 Whitaker Avenue, New Miami, Butler County, Ohio and not, as M.B. testified, 96 Whitaker Avenue, Hamilton, Butler County, Ohio. However, as discussed more fully above, regardless of whether the assault took place in Hamilton or New Miami, the trial court has territorial jurisdiction over both as set forth in R.C. 1901.02(B). Therefore, because any rational trier of fact could have found the state had proven beyond a reasonable doubt that venue was proper in the trial court based on M.B.'s testimony alone, Baker's trial counsel did not provide Baker with ineffective assistance of counsel by putting forth a defense that elicited testimony conclusively establishing that the assault occurred in New Miami and not Hamilton. Accordingly, finding Baker did not receive ineffective assistance of counsel, Baker's second assignment of error

lacks merit and is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} MS. BAKER'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 29} In her third assignment of error, Baker argues her conviction was against the manifest weight of the evidence. We disagree.

{¶ 30} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. While a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 31} Baker was convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Baker argues her conviction must be reversed because the trial court incorrectly weighed the evidence and failed to properly execute its factfinding

responsibilities since M.B.'s testimony regarding the assault lacked credibility. However, contrary to Baker's claim, M.B.'s testimony, if believed, was sufficient to establish each and every element of assault. *State v. Channels*, 2d Dist. Montgomery No. 19530, 2003-Ohio-3830, ¶ 14. The fact that the trial court believed M.B.'s testimony over that of Baker does not render Baker's conviction against the manifest weight of the evidence. *Lunsford*, 2020-Ohio-965 at ¶ 14. A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution. *State v. Crossty*, 12th Dist. Nos. CA2017-01-003 thru CA2017-01-005, 2017-Ohio-8267, ¶ 68. It is the trier of fact and not this court on appeal that makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *DeHass*, 10 Ohio St. 2d at paragraph one of the syllabus. Therefore, because Baker's conviction was not against the manifest weight of the evidence, Baker's third assignment of error lacks merit and is overruled.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE TRIAL COURT ERRED WHEN IT ORDERED MS. BAKER TO PAY A TOTAL OF $4,183.60 IN RESTITUTION.

{¶ 34} In her fourth assignment of error, Baker argues the trial court erred by ordering her to pay $4,183.60 in restitution for the medical expenses M.B. incurred to treat her broken arm. Baker supports this claim by arguing the trial court's order requiring her to pay restitution was not supported by competent and credible evidence. Baker's argument, however, is nothing more than a challenge to the trial court's guilt finding. That is to say, Baker is once again challenging the trial court's verdict finding she had knowingly caused M.B. physical harm so as to support a conviction for assault in violation of R.C. 2903.13(A). Such a challenge lacks merit. This is because, as noted above, M.B.'s testimony, if believed, was sufficient to establish each and every element of the offense. Therefore,

- 11 -

finding no error in the trial court's decision ordering Baker to pay $4,183.60 in restitution for the medical expenses M.B. incurred to treat her broken arm, Baker's fourth assignment of error lacks merit and is overruled.

{¶ 35} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.