[Cite as *In re T.I.*, 2024-Ohio-292.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| T.I. | : | CASE NO. CA2023-09-065 |
| | : | O P I N I O N<br>1/29/2024 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2023 JA 57185

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, T.I., appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for committing acts that would be charged as one count of second-degree misdemeanor criminal damaging if committed by an adult. For the reasons outlined below, we affirm the juvenile court's adjudicatory

decision.

{¶ 2} On January 19, 2023, a complaint was filed alleging T.I. was a delinquent child for committing the above-named criminal damaging offense in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor. The complaint was filed after it was alleged T.I. had damaged the door and door frame of an apartment located in Batavia Township, Clermont County, Ohio. T.I. denied the charge and the matter proceeded to an adjudicatory hearing before the juvenile court on June 29, 2023.

{¶ 3} During the adjudicatory hearing, the juvenile court heard testimony from a total of four witnesses. These four witnesses included Deputy Bobby Pham of the Clermont County Sheriff's Office, the victim who lived at the apartment T.I. was alleged to have damaged, and the apartment's property manager. The juvenile court also heard testimony from T.I. Upon hearing this testimony, the juvenile court issued a decision adjudicating T.I. as a delinquent child. In so doing, the juvenile court initially stated:

> I had the opportunity today to listen to the evidence. To observe the demeanor of the witnesses as they testify. And frankly to sort through the events as they were described by the various witnesses. And determine frankly what testimony is worthy of belief and what is [not] worthy of belief. It is interesting that Deputy Pham testified that he came on duty around 6:00 o'clock. And that within an hour to an hour and a half of coming on duty he received a phone call to come to the apartment complex where [the victim] lived as a result of an incident that had occurred.
>
> [The victim] testified, she said initially, I think in response to a question that was asked, it might have been, was it between 7:00 and 8:00 and her response was, well, it might have been earlier than that. And that was with respect to whether it was frankly still light or more dark and dusk. So, the testimony of [the victim] certainly is consistent with the testimony of Deputy Pham with respect to the timeframe in which this occurred.

{¶ 4} Continuing, the juvenile court then stated:

> Deputy Pham arrived. He did observe injury to [the victim's] door. That testimony is consistent also with what [the victim]

- 2 -

testified to in terms of there being damage to the door and her doorknob being knocked off. And it is also interesting to note that [the victim] testified about there being kids in the hallway and they took off once someone noted that they were there. And that is consistent essentially with Deputy Pham's testimony when he spoke with [T.I.] later on that evening. It is interesting also to note that when he spoke with [T.I.], that [T.I.] admitted that he and some others were in that hallway playing ding-dong ditch. And that particular game so to speak, that's where you're essentially out and kicking doors and doing other things one ought not to do. It is a means of in the Court's opinion trying to aggravate people.

Deputy Pham says that [T.I.] admitted to him that he did it. [T.I.] of course says today, no, it wasn't him. It must have been someone else. But I think, too, what is interesting that when I listen to the testimony of Deputy Pham, he did talk about speaking with another individual, a young lady. She is not here today. But based on his discussion with her and his discussion with [T.I.], he did conclude that in fact [T.I.] was the one that was doing the kicking to the door. The property manager in this case has also indicated that the damage was such that the cost of repair was $370.

{¶ 5} Concluding, the juvenile court stated:

There is no doubt in my mind that the criminal damaging offenses occurred as it is charged. And I think based on what has been testified to today, the consistency in the testimony and especially the Officer's investigation and with whom he spoke with that evening, it is my belief the State has proven their case beyond a reasonable doubt that [T.I.] was in fact the one that committed the offense of criminal damage that evening. He will be adjudicated a delinquent child.

{¶ 6} On August 8, 2023, the juvenile court held a dispositional hearing where it placed T.I. on probation as a condition of community control for a period of two years. The juvenile court also ordered T.I. to pay court costs and $370 in restitution. The trial court further ordered T.I., as part of the conditions of his probation, to not use or possess any firearms, to allow his probation officer access to all his social media, and to write an apology letter to the victim. Upon entering its disposition, the juvenile court asked T.I. if he was clear on what was expected of him, to which T.I. responded, "Yes, sir." The juvenile court then

issued its judgment entry setting forth its adjudicatory and dispositional decisions.

{¶ 7} On September 6, 2023, T.I. filed a timely notice of appeal. T.I.'s appeal now properly before this court for decision, T.I. has raised four assignments of error for review. For ease of discussion, we will address T.I.'s first and second assignments of error out of order.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED BY ALLOWING TESTIMONY REGARDING T.I.'S ADMISSION TO A POLICE OFFICER WITHOUT A PROPER MIRANDA ADVISEMENT.

{¶ 10} In his second assignment of error, T.I. argues the trial court committed plain error by admitting into evidence the confession he made to Deputy Pham prior to Deputy Pham advising him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). To support this claim, T.I. argues that Deputy Pham's questioning of him while in his mother's home, with his mother present, was akin to a custodial interrogation that required him to first waive his *Miranda* rights before any of his statements to Deputy Pham would be admissible. This is because, according to T.I., any similarly situated "thirteen-year-old child who is otherwise law abiding and has respect for authority" would have "objectively believed that they were not at liberty to terminate the interrogation and leave the home" when being questioned by "an authority figure in uniform about a criminal incident with a parent present."

{¶ 11} Although presented as an evidentiary issue, to properly address T.I.'s second assignment of error, this court must determine whether T.I. was in custody and subjected to a custodial interrogation by Deputy Pham. This is because, as it is now well established, "the duty to advise a suspect of constitutional rights pursuant to *Miranda* is only required when the police subject a person to custodial interrogation." *State v. Byrne*, 12th Dist. Butler

- 4 -

Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10, citing *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). This holds true even in child delinquency cases such as this. *See In re C.L.*, 12th Dist. Warren No. CA2021-03-021, 2021-Ohio-3782, ¶ 17 ("[b]ecause C.L. was not in custody, Deputy Coleman did not provide *Miranda* warning[s]").

{¶ 12} "Custodial interrogation, as defined by *Miranda*, is any 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 9, quoting *Miranda*, 384 U.S. at 444. "In determining whether an individual is in custody, the ultimate inquiry is whether there was a formal arrest or a 'restraint on freedom of movement of the degree associated with a formal arrest.'" *In re J.B.*, 12th Dist. Butler No. CA2004-09-226, 2005-Ohio-7029, ¶ 53, quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517 (1983). That is to say, where the individual has not been formally arrested, "the restraint on the suspect's freedom of movement must be significant in order to constitute custody." *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 23.

{¶ 13} But, even then, "a noncustodial situation is not converted into a custodial situation simply because questioning takes place in a police station." *In re A.M.*, 3d Dist. Marion No. 9-20-23, 2021-Ohio-432, ¶ 28, citing *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711 (1977). The same is true in circumstances where the questioning takes place in a courthouse or at a school. *State v. Gomez*, 12th Dist. Butler No. CA2017-03-035, 2017-Ohio-8681, ¶ 22; *State v. Loveless*, 12th Dist. Clermont No. CA2019-03-028, 2019-Ohio-4830, ¶ 41. This remains the case even though "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *In re J.B.*, 2005-Ohio-7029 at ¶ 54. "Whether a person is in custody

for *Miranda* purposes depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.*, citing *Stansbury v. California*, 511 U.S. 318, 323-324, 114 S.Ct. 1526 (1994).

{¶ 14} In this case, after a full and thorough review of the record, we find it clear that T.I. was not in custody when being questioned by Deputy Pham, thereby obviating the need for Deputy Pham to ever advise T.I. of his *Miranda* rights. In so holding, we note that T.I. was not in a police station, a courthouse, or at school at the time Deputy Pham was questioning him. T.I. was also not seated in the back of a police cruiser, nor was T.I. handcuffed, or physically threatened or otherwise harmed in any way by Deputy Pham. T.I. was instead in his mother's home, with his mother present, when being questioned by Deputy Pham. *Compare State v. C.J.*, 12th Dist. Warren No. CA2017-06-082, 2018-Ohio-1258, ¶ 26-30 (finding 13-year-old juvenile was not subjected to a custodial interrogation where, at the time the juvenile was being questioned by the officer, he was not under arrest, but rather "seated on a bench, in public," outside of a community center with his mother present) *with In re J.S.*, 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, ¶ 13-15 (finding 13-year-old juvenile was subject to a custodial interrogation where the officer's questioning took place at the police station without either of the juvenile's parents present and after police officers instructed the juvenile's father to follow them to the police station where the juvenile would be questioned). Therefore, given that T.I. was not in custody when being questioned by Deputy Pham, T.I.'s argument that it was error, plain or otherwise, for the trial court to admit the confession he made to Deputy Pham prior to being advised of his *Miranda* rights lacks merit. Accordingly, finding no merit to any of T.I.'s arguments raised herein, T.I.'s second assignment of error lacks merit and is overruled.

{¶ 15} Assignment of Error No. 1:

- 6 -

{¶ 16} T.I.'S CONVICTION IS AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶ 17} In his first assignment of error, T.I. argues the juvenile court's decision adjudicating him a delinquent child must be reversed because the finding that T.I. committed second-degree misdemeanor criminal damaging in violation of R.C. 2909.06(A)(1) was against the manifest weight of the evidence. We disagree.

{¶ 18} The standard of review employed by this court in determining whether a juvenile's adjudication as a delinquent child was against the manifest weight of the evidence is the same standard used in adult criminal cases. *In re D.T.W.*, 12th Dist. Butler No. CA2014-09-198, 2015-Ohio-2317, ¶ 32. In reviewing those types of cases, this court examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *State v. A.N.C.*, 12th Dist. Warren No. CA2017-02-012, 2018-Ohio-362, ¶ 9. In so doing, "this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 18, citing *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.

{¶ 19} However, even though this court is tasked with considering the credibility of the witnesses, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th

Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10. "[A] new trial is the appropriate remedy when a reviewing court determines that a criminal conviction is against the manifest weight of the evidence." *State v. Fips*, 160 Ohio St.3d 348, 2020-Ohio-1449, ¶ 10.

{¶ 20} To support his manifest weight challenge, T.I. argues it was error for the juvenile court to find beyond a reasonable doubt that he was the perpetrator who committed the criminal damaging offense. This is because, according to T.I., the juvenile court's finding was based on an otherwise inadmissible hearsay statement identifying T.I. as the perpetrator, as well as the confession T.I. made without first being advised of his *Miranda* rights. However, even if we were to ignore the purported inadmissible hearsay statement identifying T.I. as the perpetrator, something which T.I. never objected to at trial, the juvenile court found Deputy Pham's testimony regarding T.I.'s confession to be credible. This testimony, as discussed more fully above in T.I.'s second assignment of error, was properly admissible. The fact that T.I. testified and denied ever making such a confession to Deputy Pham does not mean the juvenile court was required to accept that testimony as true.

{¶ 21} In so holding, we note that the juvenile court, as the trier of fact, was free to believe all, part, or none of each witness' testimony. *State v. Z.G.B.*, 12th Dist. Warren No. CA2016-04-029, 2016-Ohio-7195, ¶ 17. This includes the testimony offered by Deputy Pham as it relates to T.I.'s supposed confession in this case. Simply because the juvenile court believed Deputy Pham's testimony over T.I.'s testimony does not render T.I.'s adjudication as a delinquent child against the manifest weight of the evidence. *See Baker*, 2020-Ohio-2882 at ¶ 31 ("[a] conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution"). Therefore, because the juvenile court's decision adjudicating T.I. as a delinquent child was not against the manifest weight of the evidence, T.I.'s first assignment of error also lacks merit and is overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE TRIAL COURT ERRED BY IMPOSING CONDITIONS OF PROBATION THAT WERE UNRELATED TO THE OFFENSE OF CONVICTION AND THE FACTORS OUTLINED IN R.C. 2152.01(B).

{¶ 24} In his third assignment of error, T.I. argues the juvenile court erred by imposing conditions on his community control that prohibited him from using or possessing a firearm and by "allowing the probation department unlimited access to all of his social media accounts." We disagree.

{¶ 25} Pursuant to R.C. 2152.19(A)(4), "a juvenile court has broad discretion to craft an appropriate disposition for a child adjudicated delinquent." *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, ¶ 6. This includes placing the juvenile on community control "under any sanctions, services, and conditions that the court prescribes." R.C. 2152.19(A)(4). The sanctions the juvenile court may prescribe, however, are not unlimited. They must instead be "reasonably calculated" to achieve the overriding purposes for juvenile dispositions. R.C. 2152.01(B). Those overriding purposes are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A).

{¶ 26} To ensure that these overriding purposes are achieved, "juvenile courts must evaluate the particular facts and circumstances of each case and discern the particular problems and needs of the juvenile appearing before them." *In re D.R.*, Slip Opinion No. 2022-Ohio-4493, ¶ 15. To do this, the juvenile court must consider not only the delinquent act(s) that the juvenile committed, but also the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile, and other societal factors. *In re E.T.H.*, 12th Dist. Butler No. CA2018-04-064, 2019-Ohio-79, ¶ 29. "Once imposed, such

conditions provide 'the tether that allows a court to maintain some connection with a juvenile delinquent.'" *In re J.F.*, 121 Ohio St.3d 76, 2009-Ohio-318, ¶ 12, quoting *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, ¶ 27.

{¶ 27} "A juvenile court's disposition for a juvenile adjudicated delinquent is a matter within the juvenile court's discretion." *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 33. "An appellate court will not disturb a juvenile court's decision regarding such disposition absent an abuse of discretion." *In re T.H.*, 12th Dist. Clermont Nos. CA2006-02-021 and CA2006-02-022, 2007-Ohio-352, ¶ 10. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *In re A.M.I.*, 12th Dist. Warren No. CA2014-07-095, 2015-Ohio-367, ¶ 25. "A decision is unreasonable where it is not supported by a sound reasoning process." *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22.

{¶ 28} We find nothing unreasonable, arbitrary, or unconscionable with the two community control conditions with which T.I. takes issue. Those being a prohibition on T.I., a thirteen-year-old child, using or possessing a firearm, and a requirement that T.I. provide his probation officer with access to his social media. This holds true even though, as T.I. points out in his appellate brief, neither the use of a firearm or social media were involved in the underlying criminal damaging offense, nor were they expressly requested by the state. This is because both conditions are reasonably calculated to achieve the overriding purposes for juvenile dispositions set forth in R.C. 2152.01(A), which, as stated above, are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."

{¶ 29} In so holding, we note that "a juvenile court is allowed more discretion in its

dispositional sentencing than for comparable actions under criminal law." *In re T.W.*, 7th Mahoning No. 11 MA 35, 2012-Ohio-1305, ¶ 19, citing *In re Tiber*, 154 Ohio App.3d 360, 2003-Ohio-5155, ¶ 25 (7th Dist.). Therefore, while the same conditions may not have passed muster if imposed on an adult, particularly as it relates to the firearm restriction, *see State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 30 (reversing and remanding for further proceedings trial court's decision prohibiting appellant, a guardsman with the Ohio National Guard, "from purchasing, owning, possessing, using, or having under his control, any deadly weapons or firearms as part of the conditions of his probation at all times and under any circumstances"), the juvenile court did not abuse its discretion by imposing such conditions on T.I. Accordingly, T.I.'s third assignment of error likewise lacks merit and is overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED T.I. TO WRITE A LETTER OF APOLOGY TO THE OCCUPANT OF THE APARTMENT.

{¶ 32} In his fourth assignment of error, T.I. argues it was an abuse of discretion for the juvenile court to order him to write an apology letter to the victim as part of the conditions of his probation. To support this claim, T.I. argues that requiring him to write a letter of apology under these circumstances would punish him for exercising his constitutional right allowing him to maintain his innocence. This is because, according to T.I., he was not the perpetrator who committed the charged criminal damaging offense. T.I., however, did not object when the juvenile court ordered him to write an apology letter to the victim at his dispositional hearing. T.I. also did not argue within his appellate brief that imposing such a

condition constituted plain error.[1]  "This court previously ruled that unless the appellant argues a 'claim of plain error,' appellant has waived the claimed errors not objected to below." *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 10 (12th Dist.).  Therefore, given that T.I. neither objected below nor argued a claim of plain error on appeal, T.I. waived this argument on appeal.

{¶ 33}  Nevertheless, despite T.I. having waived the issue, *see State v. George*, 11th Dist. Trumbull No. 2020-T-0025, 2021-Ohio-476, ¶ 12-18, the juvenile court determined that it was T.I. who was the perpetrator of the criminal damaging offense, a determination that we have now upheld on appeal upon finding it was not against the manifest weight of the evidence.  That T.I. wishes to maintain his innocence is a choice that he is constitutionally permitted to make, and one that may ultimately result in T.I. suffering additional consequences should he fail to satisfy the conditions of his probation by refusing to write a letter of apology to the victim as ordered by the juvenile court.  But, as this court sees it, that does not mean it was an abuse of discretion for the juvenile court to order T.I. to write an apology letter to the victim in the first instance as such an order clearly fits within the overriding purposes of juvenile dispositions set forth in R.C. 2152.01(A).  Therefore, finding no error in the juvenile court's decision, T.I.'s fourth assignment of error lacks merit and is overruled.

{¶ 34}  Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

---

1. We note that T.I. does raise a claim of plain error in his reply brief.  However, it is well settled that arguments cannot be raised for the first time in a reply brief.  *In re A.V.*, 12th Dist. Warren Nos. CA2021-04-030 thru CA2021-04-033, 2021-Ohio-3873, ¶ 36, fn. 3.  This would necessarily include a claim of plain error.