[Cite as *State v. Kilbarger*, 2014-Ohio-2341.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


STATE OF OHIO,                                  :

     Plaintiff-Appellee,                    :

                                               :

   - vs -                                         :

                                               :

DANIEL L. KILBARGER,                            :

     Defendant-Appellant.                   :

CASE NO. CA2013-04-013

O P I N I O N
6/2/2014


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 12CRI00210


Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., 110 East Court Street, Washington C.H., Ohio 45160, for plaintiff-appellee

Gabriel P. Moorman, 212 North Broadway Street, Lebanon, Ohio 45036, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Daniel Kilbarger, appeals his conviction in the Fayette County Court of Common Pleas for rape and gross sexual imposition.

{¶ 2} In October 2012, appellant was indicted on four counts of rape (all first-degree felonies) and five counts of gross sexual imposition (all fourth-degree felonies). The state alleged that appellant sexually abused a family member from September 2009 to September

2012. The victim is a mentally impaired young man with an IQ below 70. The victim was 16 years old when the abuse began, and 19 years old when it ended.

{¶ 3} A jury trial was held in April 2013. On April 5, 2013, appellant was found guilty on all counts as charged. He was subsequently classified as a Tier III sex offender and sentenced to 22 years in prison.

{¶ 4} Appellant now appeals, raising one assignment of error:

{¶ 5} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Appellant argues his conviction for rape and gross sexual imposition was against the manifest weight of the evidence because the state failed to prove that the victim's ability to consent was substantially impaired because of a mental condition.

{¶ 7} In determining whether a conviction is against the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 32. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. *State v. Bailey*, 12th Dist. Butler No. CA2002-03-057, 2003-Ohio-5280, ¶ 22. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Id.*

{¶ 8} Appellant was convicted of rape, in violation of R.C. 2907.02(A)(1)(c), which states in relevant part:

No person shall engage in sexual conduct with another who is

- 2 -

not the spouse of the offender * * * when the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition[.]

{¶ 9} Appellant was also convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(5), which states in relevant part:

No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when the ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition[.]

{¶ 10} Although it is not defined in the Ohio Criminal Code, "the phrase 'substantially impaired' * * * must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103 (1987). Substantial impairment "must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *Id.* at 103-104; *State v. Bai*, 12th Dist. Butler No. CA2010-05-116, 2011-Ohio-2206, ¶ 53.

{¶ 11} Substantial impairment may be proven by the victim's own testimony, allowing the trier of fact to observe and evaluate the victim's ability to either appraise or control his conduct, and by the testimony of others who have interacted with the victim. *Bai* at ¶ 54; *State v. Daniels*, 9th Dist. Summit No. 25808, 2011-Ohio-6414, ¶ 6. A substantial-impairment determination is made on a case-by-case basis, with great deference to the fact-finder. *Bai* at ¶ 53, citing *State v. Brown*, 3d Dist. Marion No. 9-09-15, 2009-Ohio-5428.

{¶ 12} By court order, the victim was evaluated by Dr. David Hrinko, a psychologist, for the purpose of determining the victim's ability to consent given his mental condition. At trial, Dr. Hrinko testified that the victim "suffered from a cognitive disability or significantly below

average cognitive functioning," was "a little slow mentally," had difficulty grasping abstract concepts (such as whether his father was a good father or a bad father), and "was clearly retarded," whether it was mildly or moderately. Dr. Hrinko also testified that while there is no diagnostic tool for determining one's ability to consent to sex because of a mental condition, in the case of the victim,

> [b]ecause of his cognitive disability, he showed clear evidence of impairment in his ability to understand the implications of choices. He had clear difficulties understanding the long term consequences of actions and choices. And he had difficulty therefore making reasonable decisions that would have significant impact on him. As a result, I felt that he was not capable of making a reasonable and well informed decision about whether or not to engage in sexual activities.

{¶ 13} Peggy Zimmerman, the Special Education Director for the Washington Court House City Schools, testified the victim started to attend the Washington Court House High School when he was a ninth or tenth grader. Zimmerman testified that while in high school, the victim could not follow the core curriculum as he needed significant adaptations and modifications to learn and retain knowledge, and was instead placed in the Functionally Essential Life Skills Curriculum. Under that curriculum, the victim did not learn algebra, geometry, or statistics; rather, he learned to measure (cups, half cups, inches), count money, and tell time. Likewise, because his reading skills were "very basic[,] lower than third grade level," the victim learned to make a grocery list, write a very simple letter, "write his legal signature," and read a simple recipe while in high school.

{¶ 14} Zimmerman testified the victim was "mentally retarded," with an IQ of 70 or below, and had "adaptive deficits in multiple areas," such as in his "ability to problem solve or think things through." The victim graduated from high school in May 2012, after taking the alternate assessment form of the Ohio Graduation Test. Zimmerman explained that this particular test involved tasks developed by the school intervention specialist that were

specifically designed to match the victim's level of functioning in reading, math, science, and social studies. Zimmerman also testified that when she met the victim's family for a conference before graduation, she recommended that the victim be placed under guardianship.[1]

{¶ 15} Appellant asserts the victim was not substantially impaired because the victim had a checking account and his own cellphone, played basketball and understood the rules of the game, is an excellent video game player who can read the instructions in the manual and look up advantageous codes online, and enjoyed hanging out with appellant and never told anyone otherwise, including after the sexual abuse started.

{¶ 16} We find that the foregoing evidence is "not particularly probative" on the issue of whether, at the time of the rape and gross sexual imposition incidents, "the victim had the ability to appraise the nature of the sexual conduct that occurred." *State v. Robinson*, 9th Dist. Summit No. 21317, 2003-Ohio-5360, ¶ 14. Moreover, the victim testified that the checking account was opened by appellant; both appellant and the victim could access the account; and the victim no longer has a checking account or a cellphone. The victim also testified that he plays basketball for the Special Olympics and that he did not know whether the basketball rules he knew were identical to the NBA rules. With regard to video games, the victim testified appellant would, at times, help him with the instructions.

{¶ 17} The victim also testified that although he enjoyed hanging out with appellant, having an erection or being anally penetrated was not "what [he] wanted to be doing." The victim further testified he did not tell on appellant because he was concerned that if he did, the nice things he did with and received from appellant would stop. The record shows that appellant bought the victim clothes and new games for his X Box 360, took him to his favorite

---

1. At trial, the victim's mother testified that the victim cannot live on his own and that she was seeking guardianship of her son.

restaurants, and took him to the movie theatre.

{¶ 18} Upon a thorough review of the record, we find the jury did not lose its way in finding that the victim was substantially impaired at the time of the offenses because of his mental condition. We note the jury was able to observe the victim testify on the witness stand and thus, was able to assess the victim's mental condition and his ability to appraise or control his conduct. The victim's testimony shows he gave simple descriptions and answers. The record also shows that at times, both the prosecutor and defense counsel had to rephrase questions so that the victim could understand and answer them.

{¶ 19} We therefore find that appellant's conviction for rape and gross sexual imposition was not against the manifest weight of the evidence. Appellant's assignment of error is overruled.

{¶ 20} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.