[Cite as *State v. McKinney*, 2021-Ohio-3870.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-03-029 |
| | : | O P I N I O N |
| - vs - | | 11/1/2021 |
| | : | |
| GARY W. McKINNEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. CRB2003253 A.B.

Ashley Bretland, City of Middletown Prosecuting Attorney, and Zachary A. Barnhart, Staff Attorney, for appellee.

Michele Temmel, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Gary W. McKinney, appeals his conviction in the Middletown Municipal Court after he was found guilty of second-degree misdemeanor public indecency and fourth-degree misdemeanor disorderly conduct. For the reasons outlined below, we affirm McKinney's conviction for both offenses.

{¶ 2} On December 8, 2020, McKinney was arrested and jailed on charges of public

indecency in violation of R.C. 2907.09(A)(1), a second-degree misdemeanor in accordance with R.C. 2907.09(C)(2), and disorderly conduct in violation of R.C. 2917.11(A)(2), a fourth-degree misdemeanor in accordance with R.C. 2917.11(E).

{¶ 3} As alleged in the complaint, the charges arose after McKinney was observed by numerous passersby standing outside on the 900 block of West State Street in Trenton "exposing his private parts and yelling at passing cars." The complaint alleges that Officer Matthew Rutherford with the Trenton Police Department subsequently arrived at the scene and located McKinney near the "fog line on the roadway" with "his pants at his ankles and he was pelvic thrusting towards the roadway." The complaint also alleges that a witness to McKinney's pelvic thrusting, B.W., stopped and provided Officer Rutherford with a written statement that she had seen McKinney "pull his penis out of his pants and shake it around towards the public."

{¶ 4} On January 13, 2021, McKinney was released from jail on bond. Two weeks later, on January 27, 2021, the matter was tried to the bench. During trial, the trial court heard testimony from two witnesses: B.W. and Officer Rutherford. The following is a summary of the testimony offered by those two witnesses.

{¶ 5} B.W. testified that she went to a Little Ceasars pizzeria located in Trenton to pick up a pizza on December 8, 2020 somewhere between 6:30 p.m. and 7:00 p.m. B.W. testified that upon pulling her vehicle up to the Little Ceasars she saw something unusual; McKinney standing approximately five or six feet away from Little Ceasars' front door with his "pants down, but his boxers were up." B.W. testified that upon seeing McKinney with his pants down, "hootin' and hollerin' pretty loudly" and acting "belligerent," B.W. decided to stay in her vehicle in hopes that McKinney would soon leave. B.W. testified that she then watched as McKinney removed his hat and "put it over" his "penis area" and began "shaking it up and down." B.W. testified that she also saw McKinney pull his pants down, expose his

- 2 -

private parts, and touch his penis "with his hat in his hand." B.W. testified that McKinney did this "several times" as he danced around the well-lit Little Ceasars' parking lot on that "chilly," "really cool" evening. B.W. testified that this included the two times she "very briefly" saw McKinney's exposed penis.

{¶ 6} Officer Rutherford testified that he was working as a patrolman on the evening of December 8, 2020. Officer Rutherford testified that while on patrol he was dispatched to a "little strip mall" located on the 900 block of West State Street after the Trenton Police Department received a report "of a gentleman exposing himself." Officer Rutherford testified that upon arriving at the scene he located McKinney "standing on the side of the road facing the roadway" nearby to an Auto Zone store with his "pants around his ankles pelvic thrusting towards traffic." Officer Rutherford testified McKinney was at that time approximately 300 feet from the Little Ceasars pizzeria where B.W. had seen McKinney expose his penis.

{¶ 7} Officer Rutherford testified that he then contacted McKinney who told him his "pants were around his ankles because he didn't have a belt." Officer Rutherford testified that he then detained McKinney and placed McKinney in the back of his police cruiser. Officer Rutherford testified once McKinney was in the back of his police cruiser that McKinney stated, "Let's see what the man has to decide about my dick swingin' tonight." Officer Rutherford testified that McKinney then laughed and stated, "I fuckin' love this shit." McKinney's statements were recorded by Officer Rutherford's cruiser camera microphone and played during trial without objection.

{¶ 8} After both parties rested, the trial court issued a verdict finding McKinney guilty of both second-degree misdemeanor public indecency and fourth-degree misdemeanor disorderly conduct. Explaining its verdict, the trial court initially noted that it had found B.W.'s testimony "very credible." This includes B.W.'s testimony that she had

twice seen McKinney expose his penis outside of the Little Ceasars pizzeria. The trial court then stated its findings as to whether a minor would have "likely" viewed and been affronted by McKinney's conduct :

> Regarding the uh evidence of uh whether or not children would be likely to be present. It's a public pizza parlor at 6:30 at night on a on a [sic] well whatever weekend or a weeknight it doesn't matter. And he's standing a[t] least at uh that point I think she said five (5) to six (6) feet away from the front door of Little Ceasars. Very easily, very likely could've been a child present at that and that could've observed that. So, the Court's gonna make a finding of guilty.

{¶ 9} After announcing its verdict, the trial court then proceeded immediately to sentencing and sentenced McKinney on the second-degree misdemeanor public indecency charge to 90 days in jail, with 54 days suspended, and credited McKinney with 36 days of jail-time credit. The trial court also fined McKinney $100 and ordered McKinney to pay court costs. The trial court then sentenced McKinney on the fourth-degree misdemeanor disorderly conduct charge to 30 days in jail, with all 30 days suspended, consecutive to the 90-day jail sentence imposed on the second-degree misdemeanor public indecency charge. McKinney now appeals his conviction, raising two assignments of error for review. For ease of discussion, we will address McKinney's two assignments of error out of order.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED BY NOT DISMISSING THE DEFENDANT'S CHARGES BASED ON A SPEEDY TRIAL VIOLATION.

{¶ 12} In his second assignment of error, McKinney argues the trial court erred by not dismissing both charges levied against him based on a violation of his statutory right to a speedy trial. We disagree.

{¶ 13} Pursuant to R.C. 2945.71(B)(2), a person charged with a second-degree

misdemeanor must be brought to trial within 90 days after the date of his or her arrest.[1] However, in accordance with R.C. 2945.71(E), "when an accused is held in jail on the pending charge in lieu of bail, each day is counted as three days." *State v. March*, 12th Dist. Butler No. CA2015-08-070, 2016-Ohio-3288, ¶ 14. Therefore, rather than 90 days, an incarcerated defendant charged with a second-degree misdemeanor must be brought to trial within 30 days after his or her arrest. *See, e.g., Toledo v. Phillips*, 6th Dist. Lucas No. L-14-1016, 2015-Ohio-3484, ¶ 12 ("[a]ppellant was arrested on December 3, 2013, and remained in custody until the day of trial. Accordingly, the three-for-one provision of R.C. 2945.71 required that appellant be brought to trial within 30 days of his arrest"). This timeline may be extended, however, for the reasons set forth in R.C. 2945.72. *State v. Blauvelt*, 12th Dist. Butler No. CA2007-01-034, 2007-Ohio-5897, ¶ 14. This includes "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. 2945.72(H).

{¶ 14} There is no dispute that McKinney was arrested and jailed on December 8, 2020, that McKinney was subsequently released on bond on January 13, 2021, and that McKinney's trial was thereafter held on January 27, 2021. Applying the three-for-one provision found in R.C. 2945.71(E), this means that McKinney was not brought to trial until 119 days after his arrest, 29 days over the requisite 90-day time period set forth in R.C. 2945.71(B)(2).[2] (35 days in jail x 3 = 105 + 14 days on bond = 119 total days.) Because

---

1. Because McKinney was charged with two misdemeanor offenses arising out of the same act or transaction, R.C. 2945.71(D) required McKinney to be brought to trial "within the time period required for the highest degree of offense charged," i.e., the offense charging McKinney with second-degree misdemeanor public indecency.

2. We note that although McKinney was arrested on December 8, 2020, "[t]he day of arrest does not count towards speedy trial time." *State v. Midgett*, 5th Dist. Richland No. 2020 CA 0058, 2021-Ohio-2317, ¶ 52; *see, e.g., State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 20 ("[a]ppellant was arrested on December 15, 2004. This day of arrest is not included in computing speedy trial time").

McKinney was not brought to trial until after the requisite time period expired, McKinney was able to establish a prima facie case for dismissal based on violation of his statutory right to a speedy trial. *See State v. Thacker*, 12th Dist. Warren No. CA2019-06-058, 2020-Ohio-1318, ¶ 26 ("[o]nce a defendant demonstrates he was not brought to trial within the permissible time period, the accused presents a prima facie case for dismissal based on a speedy-trial violation"). The burden, therefore, was on the state to prove that time was sufficiently tolled and the speedy-trial time period extended under R.C. 2945.72. *State v. Binks*, 12th Dist. Butler No. CA2017-08-018, 2018-Ohio-1570, ¶ 24 (once a defendant presents a primia facie case for dismissal based on a speedy-trial violation "[t]he burden then shifts to the state to prove that time was sufficiently tolled and the speedy-trial time period extended").

{¶ 15} To support this assignment of error, McKinney argues the trial court "totally disregard[ed]" the statutory mandates requiring him to be brought to trial within 90 days after being booked into jail, thus constituting a clear violation of his statutory speedy trial rights set forth in R.C. 2945.71(B)(2). However, as the record indicates, the trial court determined that it was necessary for McKinney's trial be continued on two separate occasions, once on December 30, 2020 and again on January 13, 2021, in order to ensure B.W.'s presence at trial. After a thorough review of the record, we find these two 14-day continuances were reasonable and tolled the statutory time period to bring McKinney to trial given the first continuance was issued by the trial court after B.W.'s employer would not permit her to leave work to testify, with the second continuance being issued by the trial court after B.W. reported she was unable to testify because she was showing symptoms of COVID-19.

{¶ 16} In so holding, we note the well-settled principle that the unavailability of a key prosecution witness, such as B.W., is a reasonable ground for granting a continuance

- 6 -

pursuant to R.C. 2945.72(H).  *State v. Nelson*, 12th Dist. Clinton No. CA2007-11-046, 2009-Ohio-555, ¶ 25, citing *State v. Mitchell*, 7th Dist. Mahoning No. 06-MA-169, 2008-Ohio-645, ¶ 34 ("[t]he unavailability of a material witness, specifically the store clerk and victim as to the aggravated robbery count, Kathy Abbott, was also a necessary reason to delay trial"); *State v. Constable*, 12th Dist. Clermont No. CA2006-12-107, 2007-Ohio-6570, ¶ 15-16 (the trial court's grant of a continuance to the state when its key witness was unavailable was reasonable and tolled the statutory time period to bring appellant to trial).  Therefore, because we find no error in the trial court's decision finding time was sufficiently tolled and the statutory speedy-trial time period extended under R.C. 2945.72(H) to ensure B.W.'s presence at trial, McKinney's claim alleging a violation of his statutory right to a speedy trial lacks merit.  This is because McKinney was brought to trial 63 days after his arrest (21 days in jail prior to first continuance being issued; 21 x 3 = 63), and not 119 days as alleged by McKinney.  Accordingly, McKinney's second assignment of error lacks merit and is overruled.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR PUBLIC INDECENCY AND THE JUDGMENT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19} In his first assignment of error, McKinney argues his conviction for second-degree misdemeanor public indecency was not supported by sufficient evidence and was against the manifest weight of the evidence.[3]  We disagree.

{¶ 20} Whether the evidence presented was legally sufficient to sustain a verdict is

---

3. We note that in this assignment of error McKinney does not challenge his conviction for fourth-degree misdemeanor disorderly conduct, thereby conceding that his conviction for that offense was proven beyond a reasonable doubt.

a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). "When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Tenbrook*, 12th Dist. Butler No. CA2020-01-005, 2020-Ohio-5227, ¶ 9, citing *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Moore*, 12th Dist. Fayette No. CA2020-09-016, 2021-Ohio-1856, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. "[A] reversal based on insufficient evidence leads to an acquittal that bars a retrial." *State v. Gideon*, Slip Opinion No. 2020-Ohio-6961, ¶ 27.

{¶ 21} Unlike a challenge to the sufficiency of the evidence, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34. "To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Morgan*, 12th Dist. Butler

Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34, citing *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. But, even then, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This court "will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10, citing *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 22} As noted above, McKinney was convicted of public indecency in violation of R.C. 2907.09(A)(1), a second-degree misdemeanor in accordance with R.C. 2907.09(C)(2). When read together, these statutes required the state to prove McKinney recklessly exposed his "private parts" under circumstances when a minor would have "likely" viewed and been affronted by his conduct. The Ohio Revised Code "does not specifically define the term 'private parts.'" *State v. Mackie*, 12th Dist. Warren No. CA2010-08-080, 2011-Ohio-2102, ¶ 20. The Ohio Jury Instructions manual nevertheless defines the term to mean "genitals." *State v. Jetter*, 74 Ohio App.3d 535, 536, fn. 1 (1st Dist.1991), citing 4 Ohio Jury Instructions (1991), Section 507.09. This would include McKinney's penis. *State v. Sparks*, 12th Dist. Butler No. CA2018-11-226, 2019-Ohio-3145, ¶ 8 (noting that appellant's penis was considered part of his "private parts" under the public indecency statute).

{¶ 23} The term "likely" has been equated with the term "probable." *See State v. Benner*, 40 Ohio St.3d 301, 313 (1988) (noting that Black's Law Dictionary defined the term "likely" to mean "[p]robable" or "[i]n all probability"). "[A] person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present." *State v. Green*, 18 Ohio App.3d 69, 72 (10th Dist.1984).

Therefore, based on the facts of this case, a minor was "likely" to have viewed and been affronted by McKinney's conduct if there was "a probability or a logical expectation that a minor could be present" when McKinney exposed his "private parts," i.e., his penis, to the public. *See, e.g., State v. Shannon*, 11th Dist. Trumbull No. 2020-T-0020, 2021-Ohio-789, ¶ 37 ("the state produced sufficient evidence of a probability or a logical expectation that a minor could be present when appellant exposed his private parts betwixt dumpsters in the city of Warren near a school and in a laundromat frequented by adults with children").

{¶ 24} McKinney argues the state failed to present any evidence to indicate a minor was likely to have viewed his private parts during the "very brief time" when his penis was exposed to the public. To support this claim, McKinney notes that there was no evidence that any children were seen in the area where he exposed his penis, nor were there any minivans parked in the parking lot nearby to where his penis was exposed. McKinney also supports this claim by noting that he exposed his penis during a time when "COVID restrictions" were in place, thereby making it unlikely that any minor would have viewed his penis "because the children were at home obeying COVID restrictions." McKinney further supports this claim by arguing that where he exposed his penis, i.e., five or six feet away from the front of a Little Ceasars pizzeria, was not the equivalent of a park, a school, or a Chuck E. Cheese restaurant, where it would be more likely that a minor would be present. This is in addition to McKinney noting that there was only one witness, B.W., who testified that she ever saw his penis and that her testimony indicated "she saw his penis twice and it happened very quickly."

{¶ 25} Despite McKinney's claims, however, we find the record contains extensive evidence to prove McKinney recklessly exposed his "private parts" when a minor would have "likely" viewed and been affronted by his conduct. As the record indicates, McKinney was seen between 6:30 p.m. and 7:00 p.m. on the evening of December 8, 2020 "hootin'

- 10 -

and hollerin' pretty loudly," acting "belligerent," and "pelvic thrusting" with his pants down around his ankles and his private parts exposed while standing approximately 5 to 6 feet away from the front of a Little Ceasars pizzeria located in a "little strip mall" on the 900 block of West State Street in Trenton. The record also indicates that on several occasions McKinney pulled his pants down and touched his penis "with his hat in his hand" as he danced around the well-lit Little Ceasars' parking lot on that "chilly," "really cool" evening.

{¶ 26} The record further indicates that the 900 block of West State Street where McKinney had his pants pulled down and his penis exposed was a relatively busy street that evening with numerous vehicles passing by as McKinney stood "on the side of the road facing the roadway" with his "pants around his ankles pelvic thrusting towards traffic." Therefore, while we may agree that the state did not present any evidence that a minor was *actually present* when McKinney exposed his penis to the public, the state did provide extensive evidence indicating there was a *probability or a logical expectation that a minor could be present* when McKinney exposed his private parts that evening. Accordingly, because we find McKinney's conviction for second-degree misdemeanor public indecency was supported by sufficient evidence and was not against the manifest weight of the evidence, McKinney's first assignment of error is also overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.