[Cite as *State v. Gill*, 2021-Ohio-4112.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-03-022 |
| | : | O P I N I O N |
| - vs - | | 11/22/2021 |
| | : | |
| RONALD E. GILL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 20TRD03370-A

Laura R. Gibson, City of Hamilton Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Jim L. Hardin, for appellant.


**PIPER, P.J.**

{¶1}    Appellant, Ronald Gill, appeals his convictions in the Hamilton Municipal Court for operation without control and failure to stop after an accident on private property.

{¶2}    Gill visited a Kroger grocery store and pulled his vehicle front-facing into a parking spot.  When he returned to his car after shopping, he was met by a security guard employed by Kroger who claimed that Gill had hit the back of her vehicle while parking.  A confrontation ensued between the security guard and Gill, and Gill left the parking lot without

providing his name or insurance information and without waiting for the police to arrive on the scene.

{¶3} Before Gill left the parking lot, the security guard photographed Gill's license plate and called the police. The police responded and spoke with the security guard, who provided officers the license plate information she photographed. Police obtained information that the vehicle was rented to Gill, and called him to discuss the issue. Gill admitted to an officer over the phone that he drove to the store, was involved in a confrontation with the security guard over her allegations that he hit her car, and that he did not provide his information to her. However, he denied having hit the security guard's car.

{¶4} The officer met with Gill several days later and issued him citations for failure to stop after an accident on private property as well as operating a vehicle without control. The matter proceeded to a bench trial during which multiple witnesses, including Gill, testified regarding the matter, and the trial court viewed video surveillance regarding the incident. The trial court found Gill guilty on both counts and sentenced him to a suspended jail sentence, probation, a driver's license suspension, as well as fines. Gill now appeals his convictions, raising the following assignments of error.

{¶5} Assignment of Error No. 1:

{¶6} THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF A VIOLATION OF HAMILTON OHIO CODIFIED ORDINANCE 335.13.

{¶7} Gill argues in his first assignment of error that his conviction for leaving the scene of an accident was against the manifest weight of the evidence.

{¶8} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34.

To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34, citing *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶9} However, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30. This court "will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *Ohio v. McKinney*, 12th Dist. Butler No. CA2021-03-029, 2021-Ohio-3870, ¶ 21.

{¶10} Gill was convicted of violating Hamilton Ohio Codified Ordinance 335.13, which provides,

> (a)(1)  In the case of a motor vehicle accident or collision resulting in injury or damage to persons or property on any public or private property other than a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, shall stop at the scene of the accident or collision.  Upon request of any person who is injured or damaged, or any other person, the operator shall give that person the operator's name and address, and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, and, if available, exhibit the operator's driver's or commercial driver's license.
>
> (2)  If the operator of the motor vehicle involved in the accident or collision does not provide the information specified in subsection (a)(1) of this section, the operator shall give that information, within twenty-four hours after the accident or collision, to the Police Department.

(3)   If the accident or collision is with an unoccupied or unattended motor vehicle, the operator who collides with the motor vehicle shall securely attach the information required under subsection (a)(1) of this section, in writing, to a conspicuous place in or on the unoccupied or unattended motor vehicle.

{¶11}   After reviewing the record, we find that Gill's conviction was not against the manifest weight of the evidence.  The state presented testimony from the security guard regarding the incident, which occurred on August 28, 2020.  The security guard testified that she is employed by Kroger and that she drives her personal vehicle, a 2017 Toyota Corolla, to work.  The security guard recalled parking in the lot on the day in question and later checked on her vehicle during her shift.  The security officer testified that she observed a white car parked behind her car with its front-end parked over the yellow line separating the parking spaces.  She observed damage to the rear of her vehicle that matched the same size and area of a bolt holding the license plate to the front-end of the white car.

{¶12}   The security guard testified that she reviewed surveillance video that was in use by Kroger on the day of the incident.[1]  The state then played the video and the security guard testified that based on what she observed in the video, she returned to the parking lot and photographed the vehicles in question.  The security guard testified that the video shows "his car hit my car, and the car moved a little bit."  The photographs depict how close the white car was parked to the rear of the security guard's car, as well as what damage was done to her vehicle.

{¶13}   The security guard waited near the vehicles until Gill exited the store and returned to his car where the two then engaged in a confrontation.  The security guard

---

1. The video is not in the record.  This court went to great lengths to procure a copy of the video, but the video was not kept by the lower court or the parties.  The law in Ohio is clear that an appellant bears the burden of providing a record upon which the assigned errors are rooted.  *State v. McDonald*, 12th Dist. Clermont No. CA2013-07-056, 2014-Ohio-989, ¶ 17.  Upon failure to complete the record, we are to presume the regularity of the lower court's proceedings.  *Id.*

testified that when she asked Gill for his name and insurance information, he refused to tell her. When the security guard informed Gill that she was going to call the police, he told her, "go ahead, when the cops get here, I will be gone anyway, * * * I am not staying."

{¶14} The state also presented testimony from an officer with the Hamilton Police Department who is tasked with investigating "hit skip" accidents. The officer testified that she made contact with Gill twice during her investigation. Specifically, the officer testified that she spoke with Gill first over the phone on September 2, more than 24 hours after the incident occurred, and that he admitted to being in the parking lot and having an argument with the security guard. After viewing photographs and video surveillance of the incident, the officer next met with Gill in person several days later and Gill admitted to parking in the Kroger parking lot on the day in question and having an encounter with the security guard. Gill also admitted to the officer that he had not provided his information to the security guard because "he wasn't in an accident, he didn't have to give her anything."

{¶15} Gill testified in his own defense and claimed that he did not hit the security guard's vehicle on the day in question, though Gill acknowledged that when he parked his car that day, it "stuttered a little bit." He also testified that he attempted to provide the security guard with his insurance information digitally stored within his cellular phone and that he assumed she had taken a picture of his information.

{¶16} The record indicates that the trial court viewed the photographs of the vehicles after the collision was alleged to have occurred, viewed the surveillance video of what occurred on the day in question, and was present to consider testimony from the witnesses regarding what occurred that day. By virtue of the trial court's verdict, it did not find Gill's testimony credible that he did not hit the security guard's car. Nor did the trial court find Gill's testimony credible that he tried to provide his information by showing his cellular phone to the security guard. As the trial court is in the best position to judge the credibility of the

witnesses, we will not disturb its findings on appeal.

{¶17} Gill admitted during his testimony that he did not provide the security guard with his information, and the testimony of the officer reveals that he did not provide his information to police within the 24-hour timeframe as required by the ordinance. Nor did Gill leave his information by virtue of attaching a note to the unoccupied vehicle at the time of the collision. As such, the case sub judice does not constitute the extraordinary circumstances where the evidence presented at trial weighs heavily in favor of acquittal. Upon finding that Gill's conviction is not against the manifest weight of the evidence, we overrule his first assignment of error.

{¶18} Assignment of Error No. 2:

{¶19} THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF A VIOLATION OF HAMILTON OHIO CODIFIED ORDINANCE 335.13. [SIC]

{¶20} Gill argues in his second assignment of error that the trial court erred in finding him guilty of failure to control his vehicle.[2]

{¶21} According to Hamilton Codified Ordinance 333.022,

(a) No person shall operate a motor vehicle, agricultural tractor, or agricultural tractor that is towing, pulling, or otherwise drawing a unit of farm machinery on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle, agricultural tractor or unit of farm machinery.

(b) Whoever violates this section is guilty of operating a motor vehicle or agricultural tractor without being in control of it, a minor misdemeanor.

{¶22} Hamilton Codified Ordinance 301.26(b) defines private road open to public travel as follows,

---

2. Preliminarily, the state suggests that Gill did not raise his conviction as being improper. However, we note that Gill's not guilty pleas preserves his right to object to the insufficiency of the evidence proving his conduct violated the ordinance. *See State v. Jones*, 91 Ohio St.3d 335, 346, 2001-Ohio-57.

(b) "Private road open to public travel" means a private toll road or road, including any adjacent sidewalks that generally run parallel to the road, within a shopping center, airport, sports arena, or other similar business or recreation facility that is privately owned but where the public is allowed to travel without access restrictions. "*Private road open to public travel*" includes a gated toll road but *does not include* a road within a private gated property where access is restricted at all times, *a parking area*, a driving aisle within a parking area, or a private grade crossing. (ORC 4511.01(OOO)).

(Emphasis added). Thus, the ordinances use slightly different terminology when defining what areas are or are not included within the purview of the statute for which Gill was convicted.

{¶23} Even so, we find that the terms are sufficiently related to show that parking areas are excluded from prosecution for failure to control. "Traffic" is also a defined term within the code, as a "vehicle * * * either singly or together, while using for purposes of travel any street or highway or *private road open to public travel*." (Emphasis added.) Hamilton Codified Ordinance 301.45. In other words, 333.022(a)'s "property open to the public for vehicular traffic" phrase includes the word "traffic," which is defined in 301.45 as occurring on a "private road open to public travel," which is defined in 301.26(b) as excluding parking areas. Thus, the word "traffic" ties the key phrases in 333.02 and 301.26 together and demonstrates that parking areas are excluded from the confines of the section for which Gill was convicted.[3]

{¶24} Thus, reading the applicable ordinances together, we find that 333.022 excludes "a parking area" and a "driving aisle within a parking area" from the definition of areas open to the public for vehicular traffic. As such, the trial court erred in convicting Gill of violating the ordinance, as the collision occurred in the parking area and was thus

---

3. The state concedes in its brief that Gill's conviction was improper, though it suggests without a supporting analysis that the phrases "property open to the public for vehicular traffic" and "private road open to public travel" essentially mean the same thing.

excluded from prosecution under the ordinance. Gill's conviction for failure to control is therefore reversed and he is discharged on that charge alone.

{¶25} Judgment affirmed in part, reversed and vacated in part.

M. POWELL and BYRNE, JJ., concur.